## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**FRANCISCO ALATORRE**

    **Plaintiff,**

                                          **No.**

**v.**

**NEW MEXICO STATE UNIVERSITY,**
**ENRICO PONTELLI, and DENNIS**
**GIEVER, as employees of New Mexico**
**State University**

    **Defendants.**


### NOTICE OF REMOVAL

Defendants New Mexico State University ("NMSU"), Enrico Pontelli, and Dennis Giever by and through counsel MYNATT MARTÍNEZ SPRINGER P.C. (Bradley A. Springer and Alan J. Dahl) hereby give notice of removal to this Court of the civil action filed in the Third Judicial District Court for the State of New Mexico, as Cause No. D-307-CV-2019-03322 and, in support of this removal, state as follows:

1. On December 26, 2019, Plaintiff Francisco Alatorre brought the above action alleging eight counts against the Defendants. A copy of the Complaint is attached hereto as "Exhibit A."

2. Count I of the Complaint alleges retaliation in violation of Title VII, citing 42 U.S.C. section 2000e-3(a). (*Id.*).

3. Count II alleges retaliation in violation of the Americans with Disabilities Act ("ADA"), citing 42 U.S.C. section 12203(a). (*Id.*).

4. Count III alleges retaliation in violation of the Family and Medical Leave Act ("FMLA"), citing 29 U.S.C. section 2615(a). (*Id.*).

5.   Count IV alleges retaliation in violation of the New Mexico Whistleblower Protection Act ("NMWPA"), citing NMSA 1978, Section 10-16C-3. (*Id.*).

6.   Count V alleges retaliation in violation of the New Mexico Human Rights Act ("NMHRA"), citing NMSA 1978, Section 28-1-7(I). (*Id.*).

7.   Count VI alleges discrimination and interference with rights in violation of the ADA, citing 42 U.S.C. sections 12112(a) and 12203(b). (*Id.*).

8.   Count VII alleges interference with rights in violation of the FMLA, citing 29 U.S.C. section 2615(a). (*Id.*).

9.   Count VIII alleges discrimination in violation of the NMHRA, citing NMSA 1978, Sections 28-1-7(A) and (J). (*Id.*).

### Timeliness

10.  On January 17, 2020, Defendants accepted service of process from the Plaintiff.

11. Pursuant to 28 U.S.C. section 1446(b)(1), this *Notice of Removal* is timely filed within thirty days of receipt of service of process from the Plaintiff.

### Basis for Removal of Counts I, II, III, VI, VII

12. Under 28 U.S.C. section 1331, federal district courts have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.

13. Under 28 U.S.C. Section 1441(a), a civil action brought in a state court over which a federal district court has original jurisdiction may be removed by the defendants to the federal district court.

14. Because Counts I, II, III, VI, and VII of Plaintiff's Complaint all assert claims arising out of federal law, this Court has original jurisdiction over the claims and removal is proper.

**Supplemental Jurisdiction**

15. 28 U.S.C. section 1367(a) provides that, generally, in a civil action where the federal district courts have original jurisdiction, they will also have supplemental jurisdiction over all other claims sufficiently related to the claims giving original jurisdiction that they constitute the same case or controversy.

16. Under federal case law, a claim is part of the same case or controversy if it derives from a common nucleus of operative fact. *Price v. Wolford*, 608 F.3d 698, 702-03 (10th Cir. 2010).

17. Here, the Plaintiff has asserted claims for violation of New Mexico law in Counts IV, V, and VII of the Complaint. (*See* Ex. A).

18. Each of these state-law Counts arises from the common nucleus of operative facts giving rise to the above-mentioned federal claims and therefore are subject to the supplemental jurisdiction of this Court.

**Attachments**

19. Defendants, pursuant to 28 U.S.C. section 1446(a) and the Local Rules for the United States District Court for the District of New Mexico, have attached copies of all the pleadings filed in the state action hereto as "Exhibit B."

20. Defendants have attached hereto the court docket as of January 29, 2020 as "Exhibit C."

21. Defendants have attached hereto the Civil Cover Sheet as "Exhibit D."

WHEREFORE, Defendants respectfully request that this matter be removed in its entirety from New Mexico's Third Judicial District Court to this Court for consideration.

Respectfully submitted,

MYNATT MARTÍNEZ SPRINGER P.C.

BRADLEY A. SPRINGER
New Mexico Bar No. 28225
ALAN J. DAHL
New Mexico Bar No. 148072
P.O. Box 2699
Las Cruces, NM  88004
(575) 524-8812-Phone
(575) 524-0726-Fax
bas@hmm-law.com
ajd@hmm-law.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of Januay 2020, I filed the foregoing pleading electronically through the CM/ECF system, which caused the following counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

Erika E. Anderson
LAW OFFICES OF ERIKA E. ANDERSON, LLC
2025 Rio Grande Blvd NW
Albuquerque, NM 87104
erika@eandersonlaw.com
*Attorney for Plaintiff*

BRADLEY A. SPRINGER
ALAN J. DAHL

FILED
3rd JUDICIAL DISTRICT COURT
Dona Ana County
12/26/2019 2:08 PM
DAVID S. BORUNDA
CLERK OF THE COURT
Ashley L. Barreras

STATE OF NEW MEXICO
COUNTY OF DOÑA ANA COUNTY
THIRD JUDICIAL DISTRICT COURT

FRANCISCO ALATORRE

    Plaintiff,

v.                                                                      No. _D-307-CV-2019-03322_

NEW MEXICO STATE UNIVERSITY,                          Beyer, Marci
ENRICO PONTELLI, and DENNIS
GIEVER, as employees of New Mexico
State University

    Defendants.

## CIVIL COMPLAINT FOR RETALIATION, DISCRIMINATION, AND INTERFERENCE WITH PROTECTED RIGHTS

COMES NOW Plaintiff, DR. FRANCISCO ALATORRE ("Plaintiff"), by and through his attorney, ERIKA E. ANDERSON, and for his Complaint states as follows:

## NATURE OF THE COMPLAINT

1.    This is an action against Defendants NEW MEXICO STATE UNIVERSITY (hereinafter "NMSU"), ENRICO PONTELLI (hereinafter "Pontelli"), and DENNIS GIEVER (hereinafter "Giever") (collectively, "Defendants"),  for relief from retaliation in violation of Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), the Americans with Disabilities Act (hereinafter "ADA"), the Family and Medical Leave Act (hereinafter "FMLA"), the New Mexico Whistleblower Protection Act (hereinafter "NMWPA"), and the New Mexico Human Rights Act (hereinafter "NMHRA"); for discrimination and interference with rights in violation of the ADA and the NMHRA; and for interference with rights in violation of the FMLA.

2.    Since 2015, Plaintiff has been subjected to deliberate and concerted retaliatory actions, discrimination, and interference with his rights by Defendants, because of Plaintiff's whistleblower

1

**Exhibit A**

actions in reporting misconduct and participating in proceedings, Plaintiff's protected disability, and his attempts to secure reasonable accommodation of his disability.

3.      Defendants' illegal actions include, but are not limited to, refusing and delaying Plaintiff's requests for reasonable accommodation of his disability, issuing factually inaccurate and disparaging reports about Plaintiff, denying Plaintiff a promotion and tenure, threatening Plaintiff with penalties including early termination, and, ultimately, terminating Plaintiff's employment.

## PARTIES

4.      Plaintiff was hired by NMSU as a tenure-track faculty in the Department of Criminal Justice (hereinafter "Department") of the College of Arts and Sciences (hereinafter "College") in August 2012.

5.      Defendant NMSU is a public university, established under NMSA, §§ 21-8-1 through 21-8-44, and therefore is a public employer under the NMWPA, NMSA, §10-16C-2.

6.      Defendant Pontelli was Interim Dean of the College of Arts and Sciences on February 18, 2016 to May of 2017 and then Dean of the College and a supervisor and manager of Plaintiff from February 18, 2016 to May 14, 2019.

7.      Defendant Giever was Head of the Department of Criminal Justice on July 1, 2017 and was a supervisor and manager of Plaintiff from July 1, 2017 to May 14, 2019.

## III. FACTS COMMON TO ALL COUNTS

8.      Plaintiff has been diagnosed with the post-traumatic stress disorder. Based upon this diagnosis, he is entitled to protection from discrimination based on his disability and to the provision of reasonable accommodation of his disability at work under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111(9)(B), 12112(b)(5)(A).

9.      Plaintiff's professional success and growth at NMSU is documented extensively with

reports from his Promotion and Tenure Committee (hereinafter "Committee"), Department Heads, appraisals, and peer and student evaluations.

10.     In April of 2015, in response to an NMSU-ordered investigation of problems within the Department, the College hired external consultants (hereinafter "Consultants"), to investigate claims of a pervasive and hostile work environment in the Department. Department faculty members were "urged to participate" in the Consultants' investigation by the College Dean's office. During the Consultants' investigation, Plaintiff met with the Consultants multiple times and reported extensive problems occurring within the Department, including a pervasive and hostile work environment created by misconduct engaged in by Plaintiff's colleagues.

11.     Despite being discouraged by his Department Head to report any misconduct, Plaintiff fully cooperated with the Consultants' investigation and reported misconduct by other faculty members in direct violation of Title IX, 20 U.S.C. § 1681, unprofessional and hostile behavior amongst senior faculty toward junior faculty regarding tenure and funding, and curricular changes made against the students' best interests.

12.     The Consultants' report produced findings of "the appearance of retaliation against members of the unit for raising questions" and a "consistent practice of denigration of colleagues among the faculty." The Consultants' report also recommended appointment of external mentoring Committees for all untenured faculty.

13.     On April 17, 2015, in a meeting with then-Dean of the College Dr. Slaton, Plaintiff vocalized his fear of retaliation from other faculty members, stating that he was concerned that his transparency in reporting departmental and faculty misconduct would have negative repercussions on his promotion and tenure.

14.     That same month, Plaintiff reported an incident between Dr. Keys, who is a male senior

faculty member, and a female graduate student to NMSU Office of Institutional Equity (hereinafter "OIE"). Plaintiff reported that Dr. Keys made crude and suggestive comments to the graduate student that were in direct violation of Title IX. Plaintiff was not present at the incident, but he reported it on behalf of the graduate student and in compliance with NMSU policy. Plaintiff also reported this incident to former Dean Slaton and the Consultants.

15.     Dr. Keys was a member of Plaintiff's Committee from 2012 until 2017 and responsible for determining whether Plaintiff would be promoted and granted tenure at NMSU. Fearing retaliation for his reporting, Plaintiff requested from the Dean and Department Head a transfer, a mid-probation review, and a new set of external mentors for his Committee. An external Committee was appointed.

16.     On April 29, 2015, Dr. Keys sent an email to several faculty members, including Plaintiff, recommending termination of faculty within the Department, and implying that Plaintiff be terminated for reporting misconduct.

17.     In May of 2015, Plaintiff assisted in an investigation regarding discriminatory behavior by Department faculty members, including Dr. Keys. Dr. Keys was aware of Plaintiff's assistance in the investigation and Plaintiff's reports of misconduct, including reports directly against Dr. Keys.

18.     In November of 2015, Plaintiff testified in an OIE case between then-Department Head Dr. Posadas and another member of Department faculty. At the time, an OIE staff member told Plaintiff that Plaintiff was the only witness in the case and that Dr. Posadas would have access to his testimony.

19.     In March of 2016, Dr. Keys requested that Plaintiff support Dr. Keys' efforts to reinstate Dr. Posadas as Department Head, in clear contradiction of the recommendations of the Consultants' report, but Plaintiff declined.

20.     In April of 2016, Defendant Pontelli, who had meanwhile been appointed Interim Dean of the College, dismissed the external Committee and re-appointed Dr. Keys to the Committee, despite having been told of Plaintiff's fears of retaliation from Dr. Keys.

21.     In May of 2016, less than two (2) months after Plaintiff refused to sign Dr. Keys' letter and just two (2) weeks after Dr. Keys was reinstated to Plaintiff's Committee, the Committee issued a report misrepresenting and disparaging Plaintiff's scholarship work, showing a drastic change from previous years' reports. Six (6) pieces, however, were omitted from the P & T Committee evaluation, two (2) pieces were omitted from the 2017 P & T Committee evaluation, seven (7) pieces were omitted from Dr. Amato's May 2017 Department Head assessment, three (3) pieces were omitted from the final (November 2017) P & T Committee evaluation, three (3) pieces omitted from Dr. Giever's November 2017 Department Head assessment, eight (8) pieces omitted from the December 2017 College of Arts and Sciences Faculty Affairs Committee evaluation and eight (8) pieces from Dean Pontelli's January 2018 evaluation. In response, the new Department Head, Dr. Ketelaar, issued an independent evaluation of Plaintiff's promotion and tenure candidacy, indicating that Dr. Ketelaar had trouble understanding or endorsing the Committee's concerns because they were so contradictory to previous years' positive reports about Plaintiff's performance.

22.     With Dr. Keys as chair, the Committee issued their 2016 and 2017 reports on Plaintiff in May of 2016 and March of 2017. The 2016 report omitted six (6) pieces of Plaintiff's scholarly achievement that had been previously acknowledged in the 2013, 2014 and 2015 reports. The 2017 report also omitted two (2) additional pieces of Plaintiff's scholarly achievement, for a total of eight (8) omissions. Immediately after the Committee issued its 2016 and 2017 reports, Plaintiff reached out to Defendant Pontelli with concerns of retaliation.

23.     The omissions in the Committee's 2016 and 2017 reports were an inconsistent application of NMSU and College policies, including the *Administrative Rules and Procedures of Promotion and Tenure Policies and Procedures* and the *New Mexico State University Department of Criminal Justice Functions and Criteria for Faculty Evaluation, Promotion and Tenure*.

24.     With Defendant Pontelli's knowledge, in June 2017, Plaintiff filed three (3) grievances with the OIE for faculty misconduct against Dr. Keys and other faculty members, alleging unlawful discriminatory behavior, including retaliation and discrimination on the basis of disability, national origin, ancestry and race.

25.     In August of 2017, Defendant Giever, who had meanwhile been appointed Department Head, became aware of Plaintiff's protected disability when Plaintiff requested accommodation of it from Defendant Giever. Defendant Giever, however, indicated that he would not grant Plaintiff's request for accommodation. Accordingly, Plaintiff was forced to submit a formal ADA Petition for Accommodation to the OIE in October of 2017.

26.     In November 2017, Defendant Giever provided Plaintiff with his Department Head Appraisal for Academic Year August 15, 2016 through August 13, 2017. In his appraisal, Defendant Giever did not follow NMSU's policy regarding allocation of effort. Rather than assessing Plaintiff based upon the approved allocation of effort form, Defendant Giever established new rules and made decisions with retroactive effect, resulting in an unreasonable, unfair, and biased appraisal.

27.     The OIE did not respond to Plaintiff's formal request for accommodation of his disability, although Plaintiff's medical provider was actively engaged with the OIE and provided appropriate documentation clarifying Plaintiff's needs.

28.     On January 17, 2018, Plaintiff was forced to take leave under the FMLA, 29 U.S.C. § 2611

*et seq.*, until March 22, 2018.

29.     On January 22, 2018, just five (5) days after Plaintiff began his FMLA leave, Defendant

Pontelli informed Plaintiff that neither Defendant Pontelli nor the Committee would support

Plaintiff's application for promotion and tenure.

30.     On March 14, 2018, nearly six (6) months after Plaintiff submitted the accommodation

request to the OIE and nearly eight (8) months after Plaintiff first requested accommodation from

Defendant Giever, the OIE granted Plaintiff's accommodation request, but indicated that it would

only be fulfilled in the Fall 2018 semester.

31.     Two (2) weeks later, on March 27, 2018, Defendant Giever notified Plaintiff that Plaintiff

would no longer instruct the Spring 2018 CJ591 Directed Readings course.

32.     On May 2, 2018, Plaintiff received notification that his contract would not be renewed and

that his final date of employment with NMSU would be May 14, 2019.

33.     One week later, on May 9, 2018, Defendant Giever threatened Plaintiff with disciplinary

action, including earlier termination of employment, unless Plaintiff signed a 2017-2018 allocation

of effort form. Plaintiff refused to sign the form, because it falsely listed Plaintiff's teaching

allocation as zero percent (0%) for the Spring 2018 semester. In fact, during the Spring 2018

semester, Plaintiff had been assigned two (2) courses, for a total course load of ten percent (10%),

even though Plaintiff was on FMLA leave for a portion of that semester. Plaintiff informed

Defendant Giever multiple times that signing the form with a 0% teaching allocation would be

fraudulent and would misrepresent Plaintiff's efforts for the academic year.

34.     In August of 2018, Plaintiff requested reasonable accommodation for the Spring 2019

semester, which the OIE only approved in November 2018. Again, despite Plaintiff's and his

medical provider's active engagement and prompt responses to requests by the OIE for appropriate

documentation regarding Plaintiff's needs, the OIE again failed to respond expeditiously and created unreasonable delays that put an undue burden on Plaintiff's attempts to work despite his protected disability.

35.     On May 14, 2019, Plaintiff's contract with NMSU ended. As of the date of termination of Plaintiff's employment with NMSU, Plaintiff's OIE claim against Dr. Keys and other faculty members for retaliation and discrimination was still pending.

36.     Prior to filing this action, Plaintiff filed a timely administrative complaint with the New Mexico Human Rights Bureau, which issued a right-to-sue letter to Plaintiff.

## COUNT I
### Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-3(a)

37.     The allegations set forth above are re-alleged and incorporated herein by reference.

38.     Defendants have engaged in numerous unlawful retaliatory practices against Plaintiff in violation of Title VII, 42 U.S.C. § 2000e-3(a), because he reported discriminatory practices against himself and others, communicated his concerns to management, and participated in investigations of discriminatory conduct.

39.     Defendants unlawfully retaliated against Plaintiff by issuing factually inaccurate and disparaging reports on his scholarship work, denying Plaintiff promotion and tenure, and terminating his employment.

## COUNT II
### Retaliation in Violation of the ADA, 42 U.S.C. § 12203(a)

40.     The allegations set forth above are re-alleged and incorporated herein by reference.

41.     Defendants have engaged in numerous unlawful retaliatory practices against Plaintiff in violation of the ADA, 42 U.S.C. § 12203(a), because he requested reasonable accommodation for his protected disability and was forced to take medical leave.

42.     Defendants retaliated against Plaintiff when Defendant Giever refused Plaintiff's accommodation request, although Defendant Giever had been aware of Plaintiff's need for accommodation since August of 2017, and the NMSU OIE refused to deal with the request expeditiously. Moreover, just five (5) days after Plaintiff was forced to take medical leave, Defendant Pontelli informed Plaintiff that neither Defendant Pontelli nor the Committee would support Plaintiff's application for promotion and tenure.

43.     Additionally, Defendant Giever took away one of Plaintiff's usual courses just five (5) days after Plaintiff returned from medical leave. In connection with Plaintiff's workload during the semester in which Plaintiff took medical leave, Defendant Giever also demanded that Plaintiff sign a falsified allocation of effort form misrepresenting Plaintiff's workload. Finally, Defendants unlawfully terminated Plaintiff's employment.

## COUNT III
### Retaliation in Violation of the FMLA, 29 U.S.C. § 2615(a)

44.     The allegations set forth above are re-alleged and incorporated herein by reference.

45.     Defendants have engaged in unlawful retaliatory practices against Plaintiff in violation of the FMLA, 29 U.S.C. § 2615(a), because Plaintiff opposed Defendant Giever's unlawful demand that Plaintiff falsify a report on Plaintiff's conditions of employment, namely Plaintiff's workload during the Spring 2018 semester following Plaintiff's return from FMLA leave.

46.     Defendant Giever retaliated against Plaintiff by threatening Plaintiff with disciplinary action, including earlier termination of employment.

## COUNT IV
### Retaliation in Violation of the NMWPA, NMSA, §10-16C-3

47.     The allegations set forth above are re-alleged and incorporated herein by reference.

48.     Defendants have engaged in numerous unlawful retaliatory practices against Plaintiff in

violation of the NMWPA, NMSA, § 10-16C-3, because Plaintiff communicated information to Defendants and the Consultants and testified before the NMSU OIE about actions and failures to act that Plaintiff in good faith believed to be unlawful or improper acts. Additionally, Plaintiff refused to obey Defendant Giever's demand that Plaintiff falsely report his allocation of effort for the Spring 2018 semester.

49.     In retaliation for these protected acts, the Committee issued an inaccurate and disparaging report on Plaintiff's scholarship work and subjected Plaintiff to unfavorable treatment through inconsistent application of NMSU policies and procedures. Further, Defendant Pontelli's decisions to ignore Plaintiff's concerns regarding a hostile work environment and retaliatory behavior of his peers affected Plaintiff's promotion and tenure process, which ultimately resulted in the denial of Plaintiff's promotion and tenure and his termination of employment.

## COUNT V
### Retaliation in Violation of the NMHRA, NMSA, § 28-1-7(I)

50.     The allegations set forth above are re-alleged and incorporated herein by reference.

51.     Defendants engaged in unlawful retaliatory practices against Plaintiff in violation of the NMHRA, NMSA, § 28-1-7(I), because Plaintiff opposed Defendants' unlawful discriminatory practices and filed complaints reporting those practices.

52.     Defendants unlawfully retaliated against Plaintiff by issuing factually inaccurate and disparaging reports on his scholarship work, denying Plaintiff promotion and tenure, and terminating his employment.

## COUNT VI
### Discrimination and Interference with Rights in Violation of the ADA,
### 42 U.S.C. §§ 12112(a) and 12203(b)

53.     The allegations set forth above are re-alleged and incorporated herein by reference.

54.     Defendants discriminated against Plaintiff in violation of the ADA, 42 U.S.C. § 12112(a),

by limiting Plaintiff's workload, his status, and ultimately discharging him because of his disability.

55.     Defendants informed Plaintiff of the denial of Plaintiff's promotion and tenure just five (5) days after Plaintiff went on medical leave. Defendants also removed one of Plaintiff's courses for the Spring 2018 semester just five (5) days after Plaintiff returned to work following his medical leave.

56.     Additionally, Defendants demanded that Plaintiff falsely report zero percent (0%) class load for the entire Spring 2018 semester, even though Plaintiff was on medical leave for only a portion of that semester. Finally, Defendants terminated Plaintiff's employment.

57.     Further, Defendants interfered with Plaintiff's ADA rights in violation of 42 U.S.C. § 12203(b) by unreasonably obstructing and delaying Plaintiff's attempts to obtain reasonable accommodation for his disability.

58.     Despite Plaintiff's repeated requests for reasonable accommodation for his protected disability, he had to wait for approval nearly six (6) months after submitting the request to the OIE and nearly eight (8) months after he first made the request to Defendant Giever.

59.     Finally, the OIE did not actually provide the accommodation until the Fall 2018 semester, nearly one year after Plaintiff's OIE request.

## COUNT VII
### Interference with Rights in Violation of the FMLA, 29 U.S.C. § 2615(a)

60.     The allegations set forth above are re-alleged and incorporated herein by reference.

61.     Defendants interfered with Plaintiff's FMLA rights in violation of 29 U.S.C. § 2615(a) by refusing to restore his previous conditions of employment upon his return from medical leave. As noted above, Defendants removed one of Plaintiff's courses for the Spring 2018 semester just five (5) days after Plaintiff returned to work following his medical leave.

11

62.     Defendants also demanded that Plaintiff falsely report a zero percent (0%) class load for the entire Spring 2018 semester, even though Plaintiff was on medical leave for only a portion of that semester. Finally, Defendants terminated Plaintiff's employment.

## COUNT VIII
### Discrimination in Violation of the NMHRA, NMSA, §§ 28-1-7(A) and (J)

63.     The allegations set forth above are re-alleged and incorporated herein by reference.

64.     Defendants unlawfully discriminated against Plaintiff in violation of the NMHRA, NMSA, § 28-1-7(A), by discriminating against him because of his serious medical condition.

65.     Defendants informed Plaintiff of the denial of Plaintiff's promotion and tenure just five (5) days after Plaintiff went on medical leave. Defendants also removed one of Plaintiff's courses for the Spring 2018 semester just five (5) days after Plaintiff returned to work following his medical leave.

66.     Additionally, Defendants demanded that Plaintiff falsely report zero percent (0%) class load for the entire Spring 2018 semester, even though Plaintiff was on medical leave for only a portion of that semester. Further, Defendants terminated Plaintiff's employment.

67.     Additionally, Defendants violated the NMHRA, NMSA, § 28-1-7(J), by refusing and failing to accommodate Plaintiff's serious medical condition.

68.     Despite Plaintiff's repeated requests for reasonable accommodation for his protected disability, he had to wait for approval nearly six (6) months after submitting the request to the OIE and nearly eight (8) months after he first made the request to Defendant Giever.

69.     Further, the OIE did not actually provide the accommodation until the Fall 2018 semester, nearly one year after Plaintiff's OIE request.

### PRAYER FOR RELIEF

WHEREFORE, on each and every count of this Complaint, Plaintiff requests that the Court

enter judgment in his favor and against Defendants as follows:

70.     Award all appropriate monetary and equitable relief, including the value of lost employment benefits, to Plaintiff, in an amount to be determined at trial in order to make him whole for the losses he suffered as a result of the illegal conduct alleged in this Complaint;

71.     Award Plaintiff any prejudgment interest on the amount of lost wages and benefits determined to be due;

72.     Award compensatory damages to Plaintiff to fully compensate him for the pain and suffering caused by the illegal conduct alleged in this Complaint;

73.     Award such additional relief as justice may require, together with Plaintiff's costs and disbursements in this action;

74.     Award Plaintiff punitive damages; and

75.     Such further relief as the Court deems proper and the law allows.

Respectfully submitted,

LAW OFFICES OF ERIKA E. ANDERSON, LLC

By: */s/ Erika E. Anderson*
    Erika E. Anderson
    2025 Rio Grande Blvd. NW
    Albuquerque, NM 87104
    (505) 944-9039
    erika@eandersonlaw.com
    *Attorney for Plaintiff*

FILED
3rd JUDICIAL DISTRICT COURT
Dona Ana County
12/26/2019 2:08 PM
DAVID S. BORUNDA
CLERK OF THE COURT
Ashley L. Barreras

STATE OF NEW MEXICO
COUNTY OF DOÑA ANA COUNTY
THIRD JUDICIAL DISTRICT COURT

FRANCISCO ALATORRE

    Plaintiff,

v.                               No. D-307-CV-2019-03322

NEW MEXICO STATE UNIVERSITY,             Beyer, Marci
ENRICO PONTELLI, and DENNIS
GIEVER, as employees of New Mexico
State University

    Defendants.

**CIVIL COMPLAINT FOR RETALIATION, DISCRIMINATION, AND
INTERFERENCE WITH PROTECTED RIGHTS**

COMES NOW Plaintiff, DR. FRANCISCO ALATORRE ("Plaintiff"), by and through his

attorney, ERIKA E. ANDERSON, and for his Complaint states as follows:

**NATURE OF THE COMPLAINT**

1.    This is an action against Defendants NEW MEXICO STATE UNIVERSITY (hereinafter

"NMSU"), ENRICO PONTELLI (hereinafter "Pontelli"), and DENNIS GIEVER (hereinafter

"Giever") (collectively, "Defendants"),  for relief from retaliation in violation of Title VII of the

Civil Rights Act of 1964 (hereinafter "Title VII"), the Americans with Disabilities Act (hereinafter

"ADA"), the Family and Medical Leave Act (hereinafter "FMLA"), the New Mexico

Whistleblower Protection Act (hereinafter "NMWPA"), and the New Mexico Human Rights Act

(hereinafter "NMHRA"); for discrimination and interference with rights in violation of the ADA

and the NMHRA; and for interference with rights in violation of the FMLA.

2.    Since 2015, Plaintiff has been subjected to deliberate and concerted retaliatory actions,

discrimination, and interference with his rights by Defendants, because of Plaintiff's whistleblower

1

**Exhibit B**

actions in reporting misconduct and participating in proceedings, Plaintiff's protected disability, and his attempts to secure reasonable accommodation of his disability.

3.      Defendants' illegal actions include, but are not limited to, refusing and delaying Plaintiff's requests for reasonable accommodation of his disability, issuing factually inaccurate and disparaging reports about Plaintiff, denying Plaintiff a promotion and tenure, threatening Plaintiff with penalties including early termination, and, ultimately, terminating Plaintiff's employment.

## PARTIES

4.      Plaintiff was hired by NMSU as a tenure-track faculty in the Department of Criminal Justice (hereinafter "Department") of the College of Arts and Sciences (hereinafter "College") in August 2012.

5.      Defendant NMSU is a public university, established under NMSA, §§ 21-8-1 through 21-8-44, and therefore is a public employer under the NMWPA, NMSA, §10-16C-2.

6.      Defendant Pontelli was Interim Dean of the College of Arts and Sciences on February 18, 2016 to May of 2017 and then Dean of the College and a supervisor and manager of Plaintiff from February 18, 2016 to May 14, 2019.

7.      Defendant Giever was Head of the Department of Criminal Justice on July 1, 2017 and was a supervisor and manager of Plaintiff from July 1, 2017 to May 14, 2019.

## III. FACTS COMMON TO ALL COUNTS

8.      Plaintiff has been diagnosed with the post-traumatic stress disorder. Based upon this diagnosis, he is entitled to protection from discrimination based on his disability and to the provision of reasonable accommodation of his disability at work under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111(9)(B), 12112(b)(5)(A).

9.      Plaintiff's professional success and growth at NMSU is documented extensively with

2

reports from his Promotion and Tenure Committee (hereinafter "Committee"), Department Heads, appraisals, and peer and student evaluations.

10.     In April of 2015, in response to an NMSU-ordered investigation of problems within the Department, the College hired external consultants (hereinafter "Consultants"), to investigate claims of a pervasive and hostile work environment in the Department. Department faculty members were "urged to participate" in the Consultants' investigation by the College Dean's office. During the Consultants' investigation, Plaintiff met with the Consultants multiple times and reported extensive problems occurring within the Department, including a pervasive and hostile work environment created by misconduct engaged in by Plaintiff's colleagues.

11.     Despite being discouraged by his Department Head to report any misconduct, Plaintiff fully cooperated with the Consultants' investigation and reported misconduct by other faculty members in direct violation of Title IX, 20 U.S.C. § 1681, unprofessional and hostile behavior amongst senior faculty toward junior faculty regarding tenure and funding, and curricular changes made against the students' best interests.

12.     The Consultants' report produced findings of "the appearance of retaliation against members of the unit for raising questions" and a "consistent practice of denigration of colleagues among the faculty." The Consultants' report also recommended appointment of external mentoring Committees for all untenured faculty.

13.     On April 17, 2015, in a meeting with then-Dean of the College Dr. Slaton, Plaintiff vocalized his fear of retaliation from other faculty members, stating that he was concerned that his transparency in reporting departmental and faculty misconduct would have negative repercussions on his promotion and tenure.

14.     That same month, Plaintiff reported an incident between Dr. Keys, who is a male senior

faculty member, and a female graduate student to NMSU Office of Institutional Equity (hereinafter "OIE"). Plaintiff reported that Dr. Keys made crude and suggestive comments to the graduate student that were in direct violation of Title IX. Plaintiff was not present at the incident, but he reported it on behalf of the graduate student and in compliance with NMSU policy. Plaintiff also reported this incident to former Dean Slaton and the Consultants.

15.     Dr. Keys was a member of Plaintiff's Committee from 2012 until 2017 and responsible for determining whether Plaintiff would be promoted and granted tenure at NMSU. Fearing retaliation for his reporting, Plaintiff requested from the Dean and Department Head a transfer, a mid-probation review, and a new set of external mentors for his Committee. An external Committee was appointed.

16.     On April 29, 2015, Dr. Keys sent an email to several faculty members, including Plaintiff, recommending termination of faculty within the Department, and implying that Plaintiff be terminated for reporting misconduct.

17.     In May of 2015, Plaintiff assisted in an investigation regarding discriminatory behavior by Department faculty members, including Dr. Keys. Dr. Keys was aware of Plaintiff's assistance in the investigation and Plaintiff's reports of misconduct, including reports directly against Dr. Keys.

18.     In November of 2015, Plaintiff testified in an OIE case between then-Department Head Dr. Posadas and another member of Department faculty. At the time, an OIE staff member told Plaintiff that Plaintiff was the only witness in the case and that Dr. Posadas would have access to his testimony.

19.     In March of 2016, Dr. Keys requested that Plaintiff support Dr. Keys' efforts to reinstate Dr. Posadas as Department Head, in clear contradiction of the recommendations of the Consultants' report, but Plaintiff declined.

20.     In April of 2016, Defendant Pontelli, who had meanwhile been appointed Interim Dean of the College, dismissed the external Committee and re-appointed Dr. Keys to the Committee, despite having been told of Plaintiff's fears of retaliation from Dr. Keys.

21.     In May of 2016, less than two (2) months after Plaintiff refused to sign Dr. Keys' letter and just two (2) weeks after Dr. Keys was reinstated to Plaintiff's Committee, the Committee issued a report misrepresenting and disparaging Plaintiff's scholarship work, showing a drastic change from previous years' reports. Six (6) pieces, however, were omitted from the P & T Committee evaluation, two (2) pieces were omitted from the 2017 P & T Committee evaluation, seven (7) pieces were omitted from Dr. Amato's May 2017 Department Head assessment, three (3) pieces were omitted from the final (November 2017) P & T Committee evaluation, three (3) pieces omitted from Dr. Giever's November 2017 Department Head assessment, eight (8) pieces omitted from the December 2017 College of Arts and Sciences Faculty Affairs Committee evaluation and eight (8) pieces from Dean Pontelli's January 2018 evaluation. In response, the new Department Head, Dr. Ketelaar, issued an independent evaluation of Plaintiff's promotion and tenure candidacy, indicating that Dr. Ketelaar had trouble understanding or endorsing the Committee's concerns because they were so contradictory to previous years' positive reports about Plaintiff's performance.

22.     With Dr. Keys as chair, the Committee issued their 2016 and 2017 reports on Plaintiff in May of 2016 and March of 2017. The 2016 report omitted six (6) pieces of Plaintiff's scholarly achievement that had been previously acknowledged in the 2013, 2014 and 2015 reports. The 2017 report also omitted two (2) additional pieces of Plaintiff's scholarly achievement, for a total of eight (8) omissions. Immediately after the Committee issued its 2016 and 2017 reports, Plaintiff reached out to Defendant Pontelli with concerns of retaliation.

23.     The omissions in the Committee's 2016 and 2017 reports were an inconsistent application of NMSU and College policies, including the *Administrative Rules and Procedures of Promotion and Tenure Policies and Procedures* and the *New Mexico State University Department of Criminal Justice Functions and Criteria for Faculty Evaluation, Promotion and Tenure*.

24.     With Defendant Pontelli's knowledge, in June 2017, Plaintiff filed three (3) grievances with the OIE for faculty misconduct against Dr. Keys and other faculty members, alleging unlawful discriminatory behavior, including retaliation and discrimination on the basis of disability, national origin, ancestry and race.

25.     In August of 2017, Defendant Giever, who had meanwhile been appointed Department Head, became aware of Plaintiff's protected disability when Plaintiff requested accommodation of it from Defendant Giever. Defendant Giever, however, indicated that he would not grant Plaintiff's request for accommodation. Accordingly, Plaintiff was forced to submit a formal ADA Petition for Accommodation to the OIE in October of 2017.

26.     In November 2017, Defendant Giever provided Plaintiff with his Department Head Appraisal for Academic Year August 15, 2016 through August 13, 2017. In his appraisal, Defendant Giever did not follow NMSU's policy regarding allocation of effort. Rather than assessing Plaintiff based upon the approved allocation of effort form, Defendant Giever established new rules and made decisions with retroactive effect, resulting in an unreasonable, unfair, and biased appraisal.

27.     The OIE did not respond to Plaintiff's formal request for accommodation of his disability, although Plaintiff's medical provider was actively engaged with the OIE and provided appropriate documentation clarifying Plaintiff's needs.

28.     On January 17, 2018, Plaintiff was forced to take leave under the FMLA, 29 U.S.C. § 2611

*et seq.*, until March 22, 2018.

29.     On January 22, 2018, just five (5) days after Plaintiff began his FMLA leave, Defendant Pontelli informed Plaintiff that neither Defendant Pontelli nor the Committee would support Plaintiff's application for promotion and tenure.

30.     On March 14, 2018, nearly six (6) months after Plaintiff submitted the accommodation request to the OIE and nearly eight (8) months after Plaintiff first requested accommodation from Defendant Giever, the OIE granted Plaintiff's accommodation request, but indicated that it would only be fulfilled in the Fall 2018 semester.

31.     Two (2) weeks later, on March 27, 2018, Defendant Giever notified Plaintiff that Plaintiff would no longer instruct the Spring 2018 CJ591 Directed Readings course.

32.     On May 2, 2018, Plaintiff received notification that his contract would not be renewed and that his final date of employment with NMSU would be May 14, 2019.

33.     One week later, on May 9, 2018, Defendant Giever threatened Plaintiff with disciplinary action, including earlier termination of employment, unless Plaintiff signed a 2017-2018 allocation of effort form. Plaintiff refused to sign the form, because it falsely listed Plaintiff's teaching allocation as zero percent (0%) for the Spring 2018 semester. In fact, during the Spring 2018 semester, Plaintiff had been assigned two (2) courses, for a total course load of ten percent (10%), even though Plaintiff was on FMLA leave for a portion of that semester. Plaintiff informed Defendant Giever multiple times that signing the form with a 0% teaching allocation would be fraudulent and would misrepresent Plaintiff's efforts for the academic year.

34.     In August of 2018, Plaintiff requested reasonable accommodation for the Spring 2019 semester, which the OIE only approved in November 2018. Again, despite Plaintiff's and his medical provider's active engagement and prompt responses to requests by the OIE for appropriate

documentation regarding Plaintiff's needs, the OIE again failed to respond expeditiously and created unreasonable delays that put an undue burden on Plaintiff's attempts to work despite his protected disability.

35.     On May 14, 2019, Plaintiff's contract with NMSU ended. As of the date of termination of Plaintiff's employment with NMSU, Plaintiff's OIE claim against Dr. Keys and other faculty members for retaliation and discrimination was still pending.

36.     Prior to filing this action, Plaintiff filed a timely administrative complaint with the New Mexico Human Rights Bureau, which issued a right-to-sue letter to Plaintiff.

## COUNT I
### Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-3(a)

37.     The allegations set forth above are re-alleged and incorporated herein by reference.

38.     Defendants have engaged in numerous unlawful retaliatory practices against Plaintiff in violation of Title VII, 42 U.S.C. § 2000e-3(a), because he reported discriminatory practices against himself and others, communicated his concerns to management, and participated in investigations of discriminatory conduct.

39.     Defendants unlawfully retaliated against Plaintiff by issuing factually inaccurate and disparaging reports on his scholarship work, denying Plaintiff promotion and tenure, and terminating his employment.

## COUNT II
### Retaliation in Violation of the ADA, 42 U.S.C. § 12203(a)

40.     The allegations set forth above are re-alleged and incorporated herein by reference.

41.     Defendants have engaged in numerous unlawful retaliatory practices against Plaintiff in violation of the ADA, 42 U.S.C. § 12203(a), because he requested reasonable accommodation for his protected disability and was forced to take medical leave.

42.     Defendants retaliated against Plaintiff when Defendant Giever refused Plaintiff's accommodation request, although Defendant Giever had been aware of Plaintiff's need for accommodation since August of 2017, and the NMSU OIE refused to deal with the request expeditiously. Moreover, just five (5) days after Plaintiff was forced to take medical leave, Defendant Pontelli informed Plaintiff that neither Defendant Pontelli nor the Committee would support Plaintiff's application for promotion and tenure.

43.     Additionally, Defendant Giever took away one of Plaintiff's usual courses just five (5) days after Plaintiff returned from medical leave. In connection with Plaintiff's workload during the semester in which Plaintiff took medical leave, Defendant Giever also demanded that Plaintiff sign a falsified allocation of effort form misrepresenting Plaintiff's workload. Finally, Defendants unlawfully terminated Plaintiff's employment.

### COUNT III
### Retaliation in Violation of the FMLA, 29 U.S.C. § 2615(a)

44.     The allegations set forth above are re-alleged and incorporated herein by reference.

45.     Defendants have engaged in unlawful retaliatory practices against Plaintiff in violation of the FMLA, 29 U.S.C. § 2615(a), because Plaintiff opposed Defendant Giever's unlawful demand that Plaintiff falsify a report on Plaintiff's conditions of employment, namely Plaintiff's workload during the Spring 2018 semester following Plaintiff's return from FMLA leave.

46.     Defendant Giever retaliated against Plaintiff by threatening Plaintiff with disciplinary action, including earlier termination of employment.

### COUNT IV
### Retaliation in Violation of the NMWPA, NMSA, §10-16C-3

47.     The allegations set forth above are re-alleged and incorporated herein by reference.

48.     Defendants have engaged in numerous unlawful retaliatory practices against Plaintiff in

violation of the NMWPA, NMSA, § 10-16C-3, because Plaintiff communicated information to Defendants and the Consultants and testified before the NMSU OIE about actions and failures to act that Plaintiff in good faith believed to be unlawful or improper acts. Additionally, Plaintiff refused to obey Defendant Giever's demand that Plaintiff falsely report his allocation of effort for the Spring 2018 semester.

49.    In retaliation for these protected acts, the Committee issued an inaccurate and disparaging report on Plaintiff's scholarship work and subjected Plaintiff to unfavorable treatment through inconsistent application of NMSU policies and procedures. Further, Defendant Pontelli's decisions to ignore Plaintiff's concerns regarding a hostile work environment and retaliatory behavior of his peers affected Plaintiff's promotion and tenure process, which ultimately resulted in the denial of Plaintiff's promotion and tenure and his termination of employment.

**COUNT V**
**Retaliation in Violation of the NMHRA, NMSA, § 28-1-7(I)**

50.    The allegations set forth above are re-alleged and incorporated herein by reference.

51.    Defendants engaged in unlawful retaliatory practices against Plaintiff in violation of the NMHRA, NMSA, § 28-1-7(I), because Plaintiff opposed Defendants' unlawful discriminatory practices and filed complaints reporting those practices.

52.    Defendants unlawfully retaliated against Plaintiff by issuing factually inaccurate and disparaging reports on his scholarship work, denying Plaintiff promotion and tenure, and terminating his employment.

**COUNT VI**
**Discrimination and Interference with Rights in Violation of the ADA,**
**42 U.S.C. §§ 12112(a) and 12203(b)**

53.    The allegations set forth above are re-alleged and incorporated herein by reference.

54.    Defendants discriminated against Plaintiff in violation of the ADA, 42 U.S.C. § 12112(a),

by limiting Plaintiff's workload, his status, and ultimately discharging him because of his disability.

55.     Defendants informed Plaintiff of the denial of Plaintiff's promotion and tenure just five (5) days after Plaintiff went on medical leave. Defendants also removed one of Plaintiff's courses for the Spring 2018 semester just five (5) days after Plaintiff returned to work following his medical leave.

56.     Additionally, Defendants demanded that Plaintiff falsely report zero percent (0%) class load for the entire Spring 2018 semester, even though Plaintiff was on medical leave for only a portion of that semester. Finally, Defendants terminated Plaintiff's employment.

57.     Further, Defendants interfered with Plaintiff's ADA rights in violation of 42 U.S.C. § 12203(b) by unreasonably obstructing and delaying Plaintiff's attempts to obtain reasonable accommodation for his disability.

58.     Despite Plaintiff's repeated requests for reasonable accommodation for his protected disability, he had to wait for approval nearly six (6) months after submitting the request to the OIE and nearly eight (8) months after he first made the request to Defendant Giever.

59.     Finally, the OIE did not actually provide the accommodation until the Fall 2018 semester, nearly one year after Plaintiff's OIE request.

## COUNT VII
## Interference with Rights in Violation of the FMLA, 29 U.S.C. § 2615(a)

60.     The allegations set forth above are re-alleged and incorporated herein by reference.

61.     Defendants interfered with Plaintiff's FMLA rights in violation of 29 U.S.C. § 2615(a) by refusing to restore his previous conditions of employment upon his return from medical leave. As noted above, Defendants removed one of Plaintiff's courses for the Spring 2018 semester just five (5) days after Plaintiff returned to work following his medical leave.

62.     Defendants also demanded that Plaintiff falsely report a zero percent (0%) class load for the entire Spring 2018 semester, even though Plaintiff was on medical leave for only a portion of that semester. Finally, Defendants terminated Plaintiff's employment.

**COUNT VIII**
**Discrimination in Violation of the NMHRA, NMSA, §§ 28-1-7(A) and (J)**

63.     The allegations set forth above are re-alleged and incorporated herein by reference.

64.     Defendants unlawfully discriminated against Plaintiff in violation of the NMHRA, NMSA, § 28-1-7(A), by discriminating against him because of his serious medical condition.

65.     Defendants informed Plaintiff of the denial of Plaintiff's promotion and tenure just five (5) days after Plaintiff went on medical leave. Defendants also removed one of Plaintiff's courses for the Spring 2018 semester just five (5) days after Plaintiff returned to work following his medical leave.

66.     Additionally, Defendants demanded that Plaintiff falsely report zero percent (0%) class load for the entire Spring 2018 semester, even though Plaintiff was on medical leave for only a portion of that semester. Further, Defendants terminated Plaintiff's employment.

67.     Additionally, Defendants violated the NMHRA, NMSA, § 28-1-7(J), by refusing and failing to accommodate Plaintiff's serious medical condition.

68.     Despite Plaintiff's repeated requests for reasonable accommodation for his protected disability, he had to wait for approval nearly six (6) months after submitting the request to the OIE and nearly eight (8) months after he first made the request to Defendant Giever.

69.     Further, the OIE did not actually provide the accommodation until the Fall 2018 semester, nearly one year after Plaintiff's OIE request.

**PRAYER FOR RELIEF**

WHEREFORE, on each and every count of this Complaint, Plaintiff requests that the Court

enter judgment in his favor and against Defendants as follows:

70.     Award all appropriate monetary and equitable relief, including the value of lost employment benefits, to Plaintiff, in an amount to be determined at trial in order to make him whole for the losses he suffered as a result of the illegal conduct alleged in this Complaint;

71.     Award Plaintiff any prejudgment interest on the amount of lost wages and benefits determined to be due;

72.     Award compensatory damages to Plaintiff to fully compensate him for the pain and suffering caused by the illegal conduct alleged in this Complaint;

73.     Award such additional relief as justice may require, together with Plaintiff's costs and disbursements in this action;

74.     Award Plaintiff punitive damages; and

75.     Such further relief as the Court deems proper and the law allows.

Respectfully submitted,

LAW OFFICES OF ERIKA E. ANDERSON, LLC

By: */s/ Erika E. Anderson*
        Erika E. Anderson
        2025 Rio Grande Blvd. NW
        Albuquerque, NM 87104
        (505) 944-9039
        erika@eandersonlaw.com
        *Attorney for Plaintiff*

13

FILED
3rd JUDICIAL DISTRICT COURT
Dona Ana County
12/27/2019 8:17 AM
DAVID S. BORUNDA
CLERK OF THE COURT
Ashley L. Barreras

STATE OF NEW MEXICO
COUNTY OF DONA ANA
THIRD JUDICIAL DISTRICT COURT

FRANCISCO ALATORRE,

                         Plaintiff,

V.                                              CaseNo. CV    2019-3322

                                                Judge

NEW MEXICO STATE UNIVERSITY, et al,             **Marci E. Beyer**
                              Defendant.

## ORDER REQUIRING SCHEDULING REPORTS, A DISCOVERY PLAN, EXPERT WITNESS DISCLOSURE, AND LIMITING STIPULATIONS TO ENLARGE TIME FOR RESPONSIVE PLEADINGS

IT IS SO ORDERED:

A.     Plaintiff shall serve a copy of this order on each defendant with the summons and complaint and file a certificate of such service. Parties other than plaintiffs who assert claims against others who have not been served with this order shall serve a copy of this order on those against whom they assert claims with the pleading asserting such claims and shall file a certificate of such service.

B.     Within sixty (60) calendar days after the initial pleading is filed, parties of record shall file a scheduling report with copies to opposing parties and the assigned judge. Parties shall confer and are encouraged to file a Joint Scheduling Report, LR3-Form 2.12 NMRA for Track A or LR3-Form 2.13 for Tracks B and C, or, if they cannot agree, file an individual Scheduling Report, LR3-Form 2.13 NMRA. *See* copies of forms attached hereto.

C.     Any party who enters an appearance in the case more than sixty (60) calendar days after the filing of the initial pleading shall file a scheduling report within ten (10) business days and deliver a copy to the assigned judge.

D.   If all parties are not of record within sixty (60) calendar days of the filing of the initial pleading, the party making claims against the absent parties *(Plaintiff for Defendants, Third-Party Plaintiffs for Third-Party Defendants, etc.)* shall, within five (5) business days after the sixtieth (60th) day, file and serve parties of record and deliver to the assigned judge, a written explanation why the case is not at issue and how much time is needed before the case will be at issue. The notice shall be titled "Delay in Putting the Matter at Issue."

E.   Counsel or parties who do not have attorneys may not stipulate to an enlargement of time greater than fourteen (14) calendar days for the filing of a responsive pleading without a motion and order. The motion shall state with particularity the reason(s) an enlargement is in the best interests of the parties. A copy of the motion and stipulation shall be delivered to all parties as well as counsel. The enlargement requested shall be for a specified time.

F.   When all parties have been joined and the case is at issue, the parties shall immediately notify in writing the assigned judge and the alternative dispute resolution coordinator.

G.   If appropriate, the court will refer this matter to settlement facilitation under Part VI of the Local Rules of the Third Judicial District Court.

H.   Within seventy-five (75) calendar days from the date the initial pleading is filed, or fifteen (15) calendar days after the parties alert the Court that the case is at issue, the parties shall either:

(1)   stipulate to a discovery plan and file the stipulation with the court,  or

(2)   request a hearing to establish a discovery plan pursuant to Paragraph F of Rule 1-026 NMRA.

(3)   In the absence of a stipulated discovery plan or a timely request from a party for a hearing to establish a discovery plan, the following plan shall go into effect:

Within one hundred (100) calendar days after the initial pleading was filed or fifteen (15) calendar days after a party has entered the suit, whichever is the later date, each party shall provide to all other parties:

a.   The name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed issues raised by the pleadings, identifying the subjects of the information;

b.  A copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party that are relevant to disputed issues raised by the pleadings;

c.  A computation of any category of damages claimed by the disclosing party, providing copies or making available for inspection and copying the documents or other evidentiary materials and medical records and opinions, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered;

d.  For inspection and copying, any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment;

e.  If the medical condition of a party is at issue, such party shall give a medical release authorization to opposing parties. The parties shall confer regarding the nature and extent of the release and stipulate, if possible. If the parties cannot agree, each party shall file a memorandum with a proposed medical release authorization advocating that party's proposed form to the court. A copy of the memorandum and proposed form shall be delivered to the assigned judge. Rule 1-007.1 NIMRA shall apply.

I.  Pursuant to Rule l-026(E) NMRA, parties shall reasonably supplement discovery required in Subparagraphs (3)(a) through (e) of Paragraph H of this Order.

J.  Intent to Call Expert Witness - Disclosure. All parties shall exchange a "Notice of Intent to Call Expert Witness(es)" listing the names, addresses and phone numbers for all anticipated experts, including a brief summary of the subject matter of each witness' testimony. If an expert has not yet been identified by a party, the parties must list the specialized area(s) in which an expert is anticipated to be retained and a brief summary of the areas or issues on which the expert is expected to testify.

With respect to each expert listed, all parties are to observe their continuing duty to timely supplement

discovery and shall further abide by the requirements of Section 8 of the attachment to the Rule 16(B)

Scheduling Order.

DISTRICT COURT JUDGE

Delivered to Plaintiff on December 27, 2019

David S. Borunda
Clerk of the District Court

Deputy Ashley Barreras

LR3-Form 2.12

Supreme Court Approved
August 6, 2004

STATE OF NEW MEXICO
COUNTY OF DONA ANA
THIRDJUDICIAL DISTRICT COURT

Plaintiff

vs.

NO.: D-307-CV
Judge:

Defendant

JOINT SCHEDULING REPORT STIPULATING TO TRACK A

Come now all the parties to this case, (by their counsel of record) and stipulate as

follows:

1   The court has subject matter and personal jurisdiction, and venue is proper.

2   This case is appropriate for assignment to Track A

3   The parties do not intend to amend the pleadings or file dispositive motions

4   All parties will be ready for trial *by_____(no more than six (6) months from*

   *filing of complaint)*

5   Witness lists will be exchanged and filed forty-five (45) days before trial

6   Discovery limited to interrogatories, requests for production and admission and no more

   than two (2) depositions per party.

7   All parties and counsel will either (a) select a facilitator by agreement of the parties, or

   (b) request the court's ADR coordinator to select a facilitator and will engage in a

   settlement conference within ninety (90) days from the date of the filing of the complaint.

   The parties may move for enlargement of time for the settlement conference for good

   cause shown The parties shall share the facilitator's fee, if any, equally.

8.  Exhibits: exchanged at least fifteen (15) days before trial.

This Gury____  6 ___    12 nonjury ___    ) matter will take_____hours to try.

9.  Conflicting court hearings (or other conflicts which show good cause for not setting trial)

for two (2) months following the date the matter is ready for trial:

_____

_____

10. Other: _____

SUBMITTED BY:

Name of party: _____
Attorney: _____
Address: _____
_____
Telephone Number _____

Name of party: _____
Attorney: _____
Address: _____
_____
Telephone Number _____

CERTIFICATE OF MAILING

I HEREBY CERTIFY that I mailed, delivered or faxed a copy to the assigned judge and each
party or each party's attorney on the___    day of _____,20 ___  _

_____
Signature

LR3-Form 2.13. (_____'s) Goint) scheduling report.

STATE OF NEW MEXICO
COUNTY OF DONA ANA
THIRD JUDICIAL DISTRICT COURT

, Plaintiff

vs.

NO.: D-307-CV

Judge:

, Defendant

(_____'S) (JOINT) SCHEDULING REPORT

1. This case should be assigned to Track_____

2. Jurisdiction and Venue:_____Stipulated;_____Disputed;
    Why:_____

3                   NonJury;                  6-personjury;_____12-person jury.

4. Significant legal issues, if any: _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
    _____

5.  Trial witnesses presently known (defendant's, plaintiffs, etc.): _____
    State expert type: _____

6. Settlement
    _____[I] [We] have sufficient information to evaluate the case. ·
    _____[I] [WeJhave provided sufficient information for opposing parties to evaluate
    the case.

    _____[I][We] need the following information from_____to evaluate the
    case: _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
    _____

    _____ [I] [We] need the following discovery to obtain information sufficient to
    evaluate the case:
                                                Explain why such information
    cannot be obtained informally without formal discovery:
    _____

    _____[I] [We] have scheduled a settlement conference on _____,20___ _
    with_____(facilitator) or have requested the court's ADR
    coordinator to refer to facilitation.
                            Or
    ____ [I] [We] request that this not be referred to facilitation because:
    _____
    The possibility of settlement is _ _ good,_____fair,_____poor.

· 7. Discovery:

[I] [We] estimate it will take_____months to complete discovery. *(Attach discovery plan if stipulated, or request for setting a discovery conference if wanted)* If any party requests a discovery conference, answer the following:

The party submitting this scheduling report intends to do the following discovery:

_____

*(If this is a joint scheduling report, each party shall answer this question.)*

[Plaintiff] [Defendant] intends to do the following discovery:

_____

_____

8.  [I] [We] estimate that trial will take    court days to try-

9.  Dates counsel will not be available for trial due to the following conflicting court settings *(beginning with the date immediately following the time you estimate discovery will be completed).*_____

10.  Stipulations: _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

1 l. Other:

_____

SUBMITTED BY:

Name of party: _____
Attorney: _____
Address: _____
_____
Telephone  Number _____

Name of party: _____
Attorney: _____
Address: _____
_____
Telephone  Number _____

## CERTIFICATE  OF MAILING

I HEREBY CERTIFY that I mailed, delivered or faxed a copy to the assigned judge and each party or each party's attorney on the___    day of_____20_____    _

_____
Signature

FILED
3rd JUDICIAL DISTRICT COURT
Dona Ana County
1/17/2020 10:56 AM
DAVID S. BORUNDA
CLERK OF THE COURT
Claudine Bernal

**THIRD JUDICIAL DISTRICT COURT**
**COUNTY OF DOÑA ANA**
**STATE OF NEW MEXICO**

**FRANCISCO ALATORRE,**

        Plaintiff,

v.                                             **D-307-CV-2019-03322**
                                             **Judge Marci Beyer**

**NEW MEXICO STATE UNIVERSITY,**
**ENRICO PONTELLI, and DENNIS**
**GIEVER, as employees of New Mexico**
**State University,**

        Defendants.

## ACCEPTANCE OF SERVICE

    MYNATT MARTÍNEZ SPRINGER P.C. (Bradley A. Springer), on behalf of New

Mexico State University Enrico Pontelli, and Dennis Giever, hereby accepts service of Plaintiff's

Civil Complaint for Retaliation, Discrimination, and Interference with Protected Rights, and

hereby waives the service of formal process upon said Defendants in the above-entitled cause.

    DATED this 17th day of January, 2020.

                        Respectfully submitted,

                        MYNATT MARTÍNEZ SPRINGER P.C.

                        BRADLEY A. SPRINGER
                        New Mexico Bar No. 28225
                        ALAN J. DAHL
                        New Mexico Bar No. 148072
                        P.O. Box 2699
                        Las Cruces, NM  88004
                        (575) 524-8812-Phone
                        (575) 524-0726-Fax
                        bas@hmm-law.com
                        ajd@hmm-law.com
                        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that, on _____ day of January 2020, a copy of the foregoing pleading was served on the below counsel of record via the Odyssey e-file system and electronic mail:

Erika E. Anderson
LAW OFFICES OF ERIKA E. ANDERSON, LLC
2025 Rio Grande Blvd NW
Albuquerque, NM 87104
erika@eandersonlaw.com
*Attorneys for Plaintiff*

BRADLEY A. SPRINGER
ALAN J. DAHL

# New Mexico Courts
## Case Lookup

Name Search              Case Number Search              DWI Search

Case Detail

### Francisco Alatorre v. New Mexico State University, et. al.

#### CASE DETAIL

| CASE NUMBER | CURRENT JUDGE | FILING DATE | COURT |
|---|---|---|---|
| D-307-CV-201903322 | Beyer, Marci | 12/26/2019 | LAS CRUCES DISTRICT |

#### PARTIES TO THIS CASE

| PARTY TYPE | PARTY DESCRIPTION | PARTY # | PARTY NAME |
|---|---|---|---|
| D | Defendant | 1 | NEW MEXICO STATE UNIVERSITY |
| D | Defendant | 2 | PONTELLI ENRICO |
| D | Defendant | 3 | GIEVER DENNIS |
| P | Plaintiff | 1 | ALATORRE FRANCISCO |
| | | | ATTORNEY: ANDERSON ERIKA |

#### CIVIL COMPLAINT DETAIL

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISPOSITION | DISPOSITION DATE |
|---|---|---|---|---|
| 12/27/2019 | 1 | OPN: COMPLAINT | | |

| COA SEQUENCE # | COA DESCRIPTION | | |
|---|---|---|---|
| 1 | Statutes, Ordinance Violations, Miscellaneous | | |

| PARTY NAME | PARTY TYPE | PARTY # |
|---|---|---|

#### REGISTER OF ACTIONS ACTIVITY

| EVENT DATE | EVENT DESCRIPTION | EVENT RESULT | PARTY TYPE | PARTY # | AMOUNT |
|---|---|---|---|---|---|
| 01/17/2020 | ACCEPTANCE OF SERVICE | P | | 1 | |
| | Acceptance of Service - Defendant accepts service of Plaintiffs Civil Complaint for Retaliation,Discrimination,and interference with Protected on 1/17/20 | | | | |
| 01/03/2020 | | | | | |
| 12/27/2019 | DCM (Differentiated Case Management) Scheduling Order | P | | 1 | |
| | ORDER REQUIRING SCHEDULING REPORTS A DISCOVERY PLAN, EXPERT WITNESS DISCLOSURE, AND LIMITING STIPULATIONS TO ENLARGE TIME FOR RESPONSIVE | | | | |
| 12/26/2019 | OPN: COMPLAINT | P | | 1 | |
| | Civil Complaint for Retaliation, Discrimination, and Interference With Protected Rights | | | | |

**Exhibit C**

JUDGE ASSIGNMENT HISTORY

| ASSIGNMENT DATE | JUDGE NAME | SEQUENCE # | ASSIGNMENT EVENT DESCRIPTION |
| --- | --- | --- | --- |
| 12/26/2019 | Beyer, Marci | 1 | INITIAL ASSIGNMENT |

Return    Print

©2007 New Mexico Courts

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Francisco Alatorre

**DEFENDANTS**
New Mexico State University
Enrico Pontelli
Dennis Giever

**(b)** County of Residence of First Listed Plaintiff    Maricopa, Arizona
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Doña Ana, New Mexico
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address and Telephone Number)*
Law Offices of Erika E. Anderson, LLC
Erika Anderson
2025 Rio Grande Blvd. NW
Albuquerque, NM 87104
(505) 944-9039

Attorneys *(If Known)*
Mynatt Martinez Springer PC
Bradley A. Springer
Alan J. Dahl
P.O. Box 2699
Las Cruces, NM 88004
(575) 524-8812

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 2   U.S. Government Defendant
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1331 and 1441 (a)

Brief description of cause:
Alleged Civil Rights Violation and Tort Claim

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE    1/30/20

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

JS 44 Reverse (Rev. 09/19)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
  **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
  **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.